# In re Luis Felipe CERVANTES-Gonzalez - Respondent

## File A72 058 994 - San Francisco

*Decided March 11, 1999*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

*(1) The recently amended provisions of section 212(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(i) (Supp. II 1996), which require that an alien establish extreme hardship to his or her United States citizen or permanent resident alien spouse or parent in order to qualify for a waiver of inadmissibility, are applicable to pending cases. *Matter of Soriano*, 21 I&N Dec. 516 (BIA 1996; A.G. 1997), followed.

(2) The factors to be used in determining whether an alien has established extreme hardship pursuant to section 212(i) of the Act include, but are not limited to, the following: the presence of lawful permanent resident or United States citizen family ties to this country; the qualifying relative's family ties outside the United States; the conditions in the country or countries to which the qualifying relative would relocate and the extent of the qualifying relative's ties to such countries; the financial impact of departure from this country; and, finally, significant conditions of health, particularly when tied to the unavailability of suitable medical care in the country to which the qualifying relative would relocate.

(3) The underlying fraud or misrepresentation for which an alien seeks a waiver of inadmissibility under section 212(i) of the Act may be considered as an adverse factor in adjudicating the waiver application in the exercise of discretion. *Matter of Tijam,* 21 I&N Dec. 3372 (BIA 1998), followed.

James M. Byrne, Esquire, San Francisco, California, for respondent

Shilpa Khagram, Assistant District Counsel, for the Immigration and Naturalization Service

Before: Board En Banc: DUNNE, Vice Chairman; VACCA, HEILMAN, HOLMES, HURWITZ, FILPPU, COLE, MATHON, GUENDELSBERGER, JONES, GRANT, and SCIALABBA, Board Members. Concurring Opinion: VILLAGELIU, Board Member, joined by SCHMIDT, Chairman. Concurring and Dissenting Opinion: ROSENBERG, Board Member.

GRANT, Board Member:

In an oral decision dated January 21, 1997, an Immigration Judge denied the respondent's requests for a waiver of inadmissibility and adjust-

ment of status pursuant to sections 212(i) and 245 of the Immigration and Nationality Act, 8 U.S.C. §§ 1182(i) and 1255 (Supp. II 1996). The respondent's appeal from that decision will be dismissed.[1]

## I. PROCEDURAL BACKGROUND

In a preliminary hearing held on October 26, 1995, the respondent admitted the allegations contained in the Order to Show Cause and Notice of Hearing (Form I-221) and was found deportable by the Immigration Judge. He then filed a request for adjustment of status on September 19, 1996, based on an approved visa petition filed by his United States citizen spouse.[2] Because the respondent had been convicted of possession of false identification documents, the respondent also filed a request for a waiver of inadmissibility. *See* section 245 of the Act.

The Immigration Judge originally believed that the respondent required a waiver of inadmissibility under section 212(h) of the Act, but then determined that the respondent fell within an exception to section 212(a)(2)(A)(i)(I) of the Act (crime involving moral turpitude). Specifically, the Immigration Judge found that the respondent had not been incarcerated for more than 6 months, making a waiver under 212(h) unnecessary. *See* section 212(a)(2)(A)(ii)(II) of the Act. However, the Immigration Judge determined that the respondent's crime did fall within section 212(a)(6)(C) of the Act, which renders inadmissible any alien who procures or seeks to procure, by fraud, documentation or other immigration benefits under the Act. Therefore, the respondent still needed a waiver of inadmissibility under section 212(i) of the Act (waiver for fraud or misrepresentation).

In determining whether to grant the application for a section 212(i) waiver, the Immigration Judge found that the respondent had failed to establish extreme hardship to his spouse in the event he is deported. Additionally, the Immigration Judge denied the respondent's application for adjustment of status as a matter of discretion.

On appeal, the respondent argues that the Immigration Judge erred in finding no extreme hardship and that he also gave improper weight to the

---

*AMENDED COPY

[1]In addition, the Immigration Judge denied the respondent voluntary departure as a matter of discretion. As the respondent does not raise this issue on appeal, we decline to address it.

[2]The visa petition was actually approved while the respondent's spouse was still a lawful permanent resident.

negative factors in this case. In addressing the respondent's arguments, we will engage in an independent review of the merits of the case. Prior to discussing the merits of the respondent's arguments, however, we will address several issues of statutory interpretation raised in his appeal.

## II. STATUTORY INTERPRETATION ISSUES

### A. Whether a Waiver is Required Under Section 212(i) of the Act

The respondent first argues that he does not require a waiver of inadmissibility under section 212(i) of the Act because he is not inadmissible under section 212(a)(6)(C)(i) of the Act. Specifically, he states that his sole conviction for possession of a false identification document (namely, a counterfeit Texas birth certificate) with the intent to defraud the United States (by obtaining a United States passport) does not fall within the definition of fraud in the Act. As he was convicted only of possession, he asserts that it is error to find him guilty of seeking to procure a fraudulent document. We disagree. Section 212(a)(6)(C)(i) of the Act states:

> [A]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this Act is inadmissible.
> Obviously, the respondent admits to *procuring* one document in the form of a fraudulent birth certificate. The respondent testified that he purchased the birth certificate in Los Angeles, California, for approximately $400 or $500 so that he could obtain employment. He then used the birth certificate to procure by fraud a social security number, and he used both documents to *seek to procure* a passport. The latter document was necessary in order for the respondent to be able to travel into and out of the United States and to aid him in obtaining employment.

We note also that in finding the respondent's conviction fell within section 212(a)(6)(C) of the Act, the Immigration Judge and the Immigration and Naturalization Service did not improperly "go behind" the conviction record as contended by the respondent.[3] Rather, they were merely establishing the facts regarding the respondent's fraud, which would have con-

---

[3]On appeal, the respondent argues that the Immigration Judge improperly entertained a collateral attack on the respondent's conviction. Although he correctly points out that an Immigration Judge may not go behind a conviction to determine the guilt or innocence of an alien, the respondent fails to note that the factors surrounding a conviction may be taken into consideration when making a discretionary determination. *See Matter of Thomas*, 21 I&N Dec. 20 (BIA 1995). This includes taking into consideration the respondent's future travel plans as a focus for possible future fraudulent conduct, as well as discussing the initial fraud of purchasing a fake birth certificate. *See INS v. Yueh-Shaio Yang*, 519 U.S. 26 (1996), *reversing Yang v. INS*, 58 F.3d 452 (9th Cir. 1995); *see also* discussion *infra.*

stituted grounds for inadmissibility whether or not the respondent had been convicted. *See* section 212(a)(6)(C) of the Act (no conviction is required in order to establish inadmissibility).

In sum, we agree with the Immigration Judge that the respondent's activities clearly fall within the purview of section 212(a)(6)(C)(i) of the Act. By fraud and by willful misrepresentation of a material fact, he sought to procure both "documentation" and "other benefits" under the Act. Therefore, we turn to the respondent's claim on appeal that he was not required to establish extreme hardship under recently enacted immigration legislation.

### B. Applicability of New Legislation to the Respondent's Case

On appeal, the respondent argues that he was not given an adequate opportunity to present evidence on the issue of extreme hardship because, at the time of his hearing, "the INS was not asking for any showing of 'extreme hardship.'" He concedes that the new requirements for section 212(i) relief apply to him, notwithstanding the fact that his application for relief was filed prior to the enactment of new legislation, i.e., section 349 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-639 ("IIRI-RA").[4] However, he states that his case should be remanded in order to allow him to present adequate evidence on the issue of extreme hardship.[5]

We first note that the respondent's concession is in accord with the Attorney General's decision in *Matter of Soriano*, 21 I&N Dec. 516 (BIA 1996; A.G. 1997), which holds that the enactment of new statutory rules of eligibility for discretionary forms of relief acts to withdraw her jurisdiction to grant such relief in pending cases to aliens who do not qualify under those new rules. In conducting a statutory analysis of the new amendments to section 212(c) of the Act, 8 U.S.C. § 1182(c) (1994), *as amended by* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-

---

[4]IIRIRA § 349 amended section 212(i) of the Act to require a showing of extreme hardship to an alien's United States citizen or permanent resident alien spouse or parent. This section of the IIRIRA also limited the availability of section 212(i), which had previously allowed aliens to establish eligibility if they were parents of United States citizens or lawful permanent resident aliens. *Id.*

[5]We note that the respondent appears to be confused as to the date the IIRIRA was enacted. The date of enactment and the effective date for many provisions in this new legislation was September 30, 1996, while other changes made by the IIRIRA were delayed from going into effect until April 1, 1997. The changes made by section 349 were effective on September 30, 1996. Therefore, as the respondent's case was adjudicated on January 21, 1997, it was after the date the IIRIRA became effective, and the new requirement of extreme hardship applies to the respondent's case.

132, § 440(d), 110 Stat. 1214, 1277 ("AEDPA"), the Attorney General stated:

> In summary, under *Landgraf [v. USI Film Products*, 511 U.S. 244 (1994)], a new statute does not have retroactivity effect if it does not impair rights a party possessed when he or she acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. More specifically, an intervening statute that either alters jurisdiction or affects prospective injunctive relief generally does not raise retroactivity concerns, and, thus, presumptively is to be applied in pending cases.

*Matter of Soriano, supra*, A.G. opinion at 536. Likewise, the Attorney General concluded that the new provisions in section 212(c) applied to pending cases because the new legislation acted to withdraw her authority to grant prospective relief; it did not speak to the rights of the affected party. *Id.* at 536. The effect was therefore to alter both jurisdiction and the availability of prospective relief to the alien. *Id.* at 7; *see also* AEDPA § 440(d).

Similarly, we find the request for a waiver of inadmissibility pursuant to section 212(i) of the Act is a request for prospective relief. "'It is not designed to remedy the past but only to affect petitioner's future status with respect to the legality of his presence in the United States.'" *Matter of Soriano, supra*, A.G. opinion at 538 (quoting *Scheidemann v. INS*, 83 F.3d 1517, 1523 (3d Cir. 1996) (discussing section 212(c) of the Act)). The consequences to both the respondent in this case and the respondent in *Scheidemann* were clear at the time of that conduct and remain unchanged today—both were subject to possible criminal sanctions and deportation. *Id.* Therefore, based on the foregoing, we find that the amendments to section 212(i) of the Act are substantially similar to those discussed in *Matter of Soriano, supra*, in that they affect only prospective injunctive relief. As we are bound by the Attorney General's prior decision, we apply this analysis to the respondent's case and find that new provisions in section 212(i) must be applied to pending cases. *See Matter of Montenegro*, 20 I&N Dec. 603 (BIA 1992) (holding that the Board and all the Immigration Judges are strictly bound by the determinations of the Attorney General because our jurisdiction derives from hers). Since the amendments made by section 349 of the IIRIRA were effective upon the date of enactment, September 30, 1996, they were properly applied by the Immigration Judge in his decision of January 21, 1997.[6]

Therefore, we reject the respondent's claim that since "INS was not asking for any showing of extreme hardship," his case should be remanded for an opportunity to present evidence of extreme hardship. It is clear from

---

[6]The argument in the respondent's brief which addresses when the Department of State communicated the new section 212(i) requirements to its overseas consular offices is irrelevant. It is clear from the record that the Immigration Judge was aware of the new standard and applied it to this case.

the record that the parties were aware that the extreme hardship requirement added by IIRIRA was being applied to the respondent's case, and he had ample opportunity to present evidence in this regard. Based on the foregoing, we find no error in the Immigration Judge's application of extreme hardship to this case, and we also find no ground upon which to remand. Accordingly, we will now discuss whether the respondent has met the statutory requirement of extreme hardship.

## III. MERITS OF THE RESPONDENT'S CASE

### A. Extreme Hardship

As we have stated in other cases involving discretionary relief, extreme hardship is not a definable term of fixed and inflexible meaning, and the elements to establish extreme hardship are dependent upon the facts and circumstances of each case. *See Matter of Chumpitazi*, 16 I&N Dec. 629 (BIA 1978). The Board has, however, enunciated factors relevant to the issue of the extreme hardship determination in previous decisions, albeit ones involving relief other than a section 212(i) waiver.

Although it is, for the most part, prudent to avoid cross application between different types of relief of particular principles or standards, we find the factors articulated in cases involving suspension of deportation[7] and other waivers of inadmissibility to be helpful, given that both forms of relief require extreme hardship and the exercise of discretion. *See Matter of Mendez*, 21 I&N Dec. 296 (BIA 1996) (applying discretionary factors articulated in a section 212(c) case to a waiver of inadmissibility under section 212(h)(1)(B) of the Act); *see also Hassan v. INS*, 927 F.2d 465, 467 (9th Cir. 1991) (noting that suspension cases interpreting extreme hardship are useful for interpreting extreme hardship in section 212(h) cases). These factors relate to the level of extreme hardship which an alien's "qualifying relative," in this case his spouse, would experience upon deportation of the respondent. *INS v. Hector*, 479 U.S. 85 (1986) (stating that the Board does not need to consider hardship to third parties other than the qualifying relatives delineated in the Act for purposes of deciding whether an alien is entitled to relief).

### 1. Factors To Be Considered

The factors deemed relevant in determining extreme hardship to a qual-

---

[7]We note that this form of relief was repealed by the IIRIRA. *See* section 244(a) of the Act, 8 U.S.C. § 1254(a) (1994) (including extreme hardship as one of several statutory elements required for suspension of deportation).

ifying relative include, but are not limited to, the following: the presence of lawful permanent resident or United States citizen family ties to this country; the qualifying relative's family ties outside the United States; the conditions in the country or countries to which the qualifying relative would relocate and the extent of the qualifying relative's ties to such countries; the financial impact of departure from this country; and, finally, significant conditions of health, particularly when tied to an unavailability of suitable medical care in the country to which the qualifying relative would relocate. *See Jong Ha Wang v. INS*, 450 U.S. 139 (1981); *Gutierrez-Centeno v. INS*, 99 F.3d 1529 (9th Cir. 1996); *Shooshtary v. INS*, 39 F.3d 1049 (9th Cir. 1994); *Palmer v. INS*, 4 F.3d 482 (7th Cir. 1993); *Cerrillo-Perez v. INS*, 809 F.2d 1419 (9th Cir. 1987); *Ramirez-Durazo v. INS*, 794 F.2d 491 (9th Cir. 1986); *Sanchez v. INS*, 755 F.2d 1158 (5th Cir. 1985); *Contreras-Buenfil v. INS*, 712 F.2d 401 (9th Cir. 1983); *Ramirez-Gonzalez v. INS*, 695 F.2d 1208 (9th Cir. 1983); *see also Matter of Pilch*, 21 I&N Dec. 627 (BIA 1996); *Matter of L-O-G-*, 21 I&N Dec. 413 (BIA 1996); *Matter of O-J-O-*, 21 I&N Dec. 381 (BIA 1996); *Matter of Ige*, 20 I&N Dec. 880 (BIA 1994); *Matter of Anderson*, 16 I&N Dec. 596 (BIA 1978).

While not all of the foregoing factors need be analyzed in any given case, we will now apply those factors to the present case to the extent they are relevant in determining extreme hardship to the respondent's spouse. We emphasize again, however, that the list of factors noted above is not exclusive and also that the Attorney General and her delegates have the authority to construe extreme hardship narrowly. *INS v. Jong Ha Wang, supra*, at 144. In addition, we note that establishing extreme hardship does not create any entitlement to relief. Although extreme hardship is a requirement for section 212(i) relief, once established, it is but one favorable discretionary factor to be considered. *See Matter of Mendez, supra*, at 7.

## 2. Analysis

The respondent is a 24-year-old native and citizen of Mexico. He has resided in the United States since 1989 and was recently married in 1995. At the time of the marriage, the respondent's wife was a lawful permanent resident; she became a naturalized United States citizen in 1996. Both the respondent and his wife reside with her family and provide them some financial support in return for room and board. Most of the respondent's family, however, resides in Mexico.

The respondent testified that he and his wife have very little money. Therefore, if forced to accompany the respondent to Mexico, the respondent's wife would be unable to travel back and forth to visit her family in the United States. In addition, the respondent's wife testified that she would have difficulty in obtaining employment in Mexico.

Having fully weighed the factors mentioned above, we find that the

566

respondent has failed to establish extreme hardship to his spouse. As noted in the Immigration Judge's decision, the respondent's wife knew that the respondent was in deportation proceedings at the time they were married.[8] In contrast to the respondent's assertions on appeal, this factor is not irrelevant. Rather, it goes to the respondent's wife's expectations at the time they were wed. Indeed, she was aware that she may have to face the decision of parting from her husband or following him to Mexico in the event he was ordered deported. In the latter scenario, the respondent's wife was also aware that a move to Mexico would separate her from her family in California. We find this to undermine the respondent's argument that his wife will suffer extreme hardship if he is deported. *See Perez v. INS*, 96 F.3d 390, 392 (9th Cir. 1996) (stating that "'[e]xtreme hardship' is hardship that is 'unusual or beyond that which would normally be expected' upon deportation. 'The common results of deportation are insufficient to prove extreme hardship.'" (quoting *Hassan v. INS, supra*, at 468)); *Shooshtary v. INS, supra*, at 1051 (holding that the uprooting of family and separation from friends does not necessarily amount to extreme hardship but rather represents the type of inconvenience and hardship experienced by the families of most aliens being deported); *Silverman v. Rogers*, 437 F.2d 102, 107 (1st Cir. 1970) (stating that "[e]ven assuming that the federal government had no right either to prevent a marriage or destroy it, we believe that here it has done nothing more than to say that the residence of one of the marriage partners may not be in the United States"), *cert. denied*, 402 U.S. 983 (1971).

Additionally, at no time during the hearing did the respondent's wife suggest that she would suffer any particular hardship, let alone extreme hardship, by moving to Mexico. *See Shooshtary v. INS, supra*, at 1051 (reviewing the Board's denial of a waiver of inadmissibility under section 212(h)(1)(B) of the Act, and stating that a "'waiver should be granted only in those cases where "great actual or prospective injury" to the qualifying party will occur. There must be an "extreme impact" on the citizen or lawful permanent resident family member. . . .'" (quoting the Board's decision in the case, which in turn quoted *Matter of Ngai*, 19 I&N Dec. 245 (BIA 1984))). Furthermore, although the respondent's spouse would lose the physical proximity to her family, she speaks Spanish and the majority of her family is originally from Mexico. Therefore, she should have less difficulty adjusting to life in a foreign country. *See Ramirez-Durazo v. INS, supra*, at 498 (noting that the family spoke Spanish, which would ease the children's transition to Mexican society and schools, and that any hardship

---

[8] We note that, on appeal, the respondent argues that the Immigration Judge failed to consider the hardship to his wife. We disagree and find that the Immigration Judge gave adequate consideration to this issue.

would be alleviated by numerous relatives living in the country to which the qualifying aliens would be relocating); *Ramirez-Gonzalez v. INS, supra*, at 1211 (holding that the hardship resulting from separation from extended family would be alleviated by immediate family relatives living in the alien's homeland); *see also Matter of Pilch, supra*, at 632 (noting that numerous family members in Poland may be able to provide an emotional base of support upon the aliens' return to that country).

In addition, neither the respondent nor his wife have any real financial ties to the United States. The respondent's wife is currently unemployed. Although the respondent is a musician in a band, he provided no evidence to prove that it had experienced success such that deportation would cause him to relinquish a lucrative career and, therefore, plunge his wife into unaccustomed poverty. Even if this were the case, we have generally not found financial hardship alone to amount to extreme hardship. *See, e.g., INS v. Jong Ha Wang, supra*, at 144 (holding that the mere showing of economic detriment to qualifying family members is insufficient to warrant findings of extreme hardship); *Ramirez-Durazo v. INS*, *supra*, at 499 (finding no extreme hardship where the child faced a lower standard of living in Mexico); *Hernandez-Patino v. INS*, 831 F.2d 750, 755 (7th Cir. 1987); *Holley v. INS*, 727 F.2d 189 (1st Cir. 1984); *Jong Shik Choe v. INS*, 597 F.2d 168 (9th Cir. 1979); *see also Shooshtary v. INS, supra*, at 1051 (stating that the "extreme hardship requirement of section 212(h)(2) was not enacted to insure that the family members of excludable aliens fulfill their dreams or continue in the lives which they currently enjoy").

In sum, the respondent has failed to show that his spouse would suffer extreme hardship over and above the normal economic and social disruptions involved in the deportation of a family member. *See Matter of Pilch, supra; see also Hassan v. INS, supra*, at 468 (finding that an alien attempting to establish extreme hardship must show a more severe impact than that of the common results of deportation); *Ramirez-Durazo v. INS, supra,* at 498. Therefore, we agree with the Immigration Judge's decision denying the respondent a waiver of inadmissibility under section 212(i) of the Act.

Having found the respondent statutorily ineligible for relief, we decline to discuss whether or not he merits a waiver as a matter of discretion. However, for purposes of clarity and future adjudications, we will address the respondent's argument that the Immigration Judge erred in considering his original fraud as an adverse factor when discussing discretion.

### B. Use of Underlying Fraud as an Adverse Factor in Determining Discretionary Relief

On appeal, the respondent cites several cases to support his assertion that the Immigration Judge erroneously focused on the underlying fraud as an adverse factor. *See Matter of Alonzo*, 17 I&N Dec. 292 (Comm'r 1979);

*Matter of Da Silva*, 17 I&N Dec. 288 (Comm'r 1979). As correctly noted by the respondent, these cases stand for the proposition that obtaining certain documentation by fraud, in order to achieve an immigration benefit, "shows disrespect for the law, but . . . is the action for which [the applicants] seek to be forgiven and should not be held as an adverse factor." *Matter of Alonzo, supra*, at 294. However, this Board is not bound by decisions of the Commissioner of the Immigration and Naturalization Service. *See Matter of Fueyo*, 20 I&N Dec. 84, 87 n.3 (BIA 1989). In addition, since the writing of these decisions, several changes in law have required us to reevaluate the issue of use of underlying fraud as an adverse factor.

Specifically, the United States Supreme Court ruled in *INS v. Yueh-Shaio Yang*, 519 U.S. 26 (1996), that the Attorney General has the authority to consider *any and all* negative factors, including the respondent's initial fraud, in deciding whether or not to grant a waiver under section 241(a)(1)(H) of the Act. Therefore, as more thoroughly articulated in *Matter of Tijam*, 22 I&N Dec. 3372 (BIA 1998), the Supreme Court has undercut the rationale of *Matter of Da Silva, supra*, and *Matter of Alonzo, supra*. For this reason, as well as those stated in *Matter of Tijam, supra*, we find that the Immigration Judge properly considered the respondent's underlying fraud as an adverse factor in denying him relief under section 212(i) of the Act as a matter of discretion.

## IV. CONCLUSION

Based on the foregoing, we conclude that the respondent has failed to establish statutory eligibility for a waiver of inadmissibility under section 212(i) of the Act. Therefore, he is also ineligible for adjustment of status. In addition, we find that the Immigration Judge properly considered the respondent's underlying fraud as an adverse factor when denying him relief as a matter of discretion. Accordingly, his appeal will be dismissed.

**ORDER:** The appeal is dismissed.

Board Member Anthony C. Moscato did not participate in the decision in this case.

*CONCURRING OPINION:* Gustavo D. Villageliu, Board Member, in which Paul W. Schmidt, Chairman, joined

I respectfully concur.

While I generally concur with both the result and reasoning of the majority opinion, I write separately to address briefly four minor points in the majority's precedent opinion that may be misinterpreted.

First, in assessing the extreme hardship requirement, the majority cites *INS v. Hector*, 479 U.S. 85 (1986), for the proposition that hardship to rel-

atives not listed under former section 244(a) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a) (1994), need not be considered. However, the Supreme Court in *INS v. Hector, supra*, at 86 n.1, specifically recognized the relevance of such relatives' suffering to the determination of the hardship the respondent will suffer if deported, citing *Contreras-Buenfil v. INS,* 712 F.2d 401, 403 (9th Cir. 1983) (separation from woman and her son respondent lived with), and *Antoine-Dorcelli v. INS,* 703 F.2d 19, 21-22 (1st Cir. 1983) (separation from family for whom respondent was caretaker). Moreover, the United States Court of Appeals for the Ninth Circuit, where this case arises, has ruled that in considering the totality of factors relevant to the extreme hardship determination in suspension applications, the Board abused its discretion in failing to consider the consequences of an alien's deportation on other relatives not specifically listed under section 244(a)(1). *See Tukhowinich v. INS*, 64 F.3d 460 (9th Cir. 1995). The majority's statement that nonqualifying relatives need not be considered should be read only as applicable to applications for relief under section 212(i) of the Act, 8 U.S.C. § 1182(i) (Supp. II 1996), where hardship to the applicant is not a listed factor.

Second, the majority's opinion may be read to imply that the time the respondent and his spouse wed is determinative as to whether to discount the spouse's hardship because of diminished expectations when marrying an alien in deportation proceedings. I disagree with that implication. Such diminished expectations clearly must relate to the actual circumstances, both of the marriage, and of the pending deportation proceedings, and the totality of the circumstances is paramount. Moreover, we only "discount" equities acquired after a final order of deportation. *See Matter of Correa*, 19 I&N Dec. 130 (BIA 1984). In this case no final order was entered since an appeal was pending. *See Matter of Lok*, 18 I&N Dec. 101 (BIA 1981) (stating that an order is final when the Board renders its decision on appeal).

Here, such a discount was appropriate, as the majority properly pointed out that the respondent's spouse at no time suggested that she would suffer any particular hardship if she moved to Mexico with the respondent. A different situation would arise, for instance, where the marriage takes place after proceedings are initiated, but was preceded by a long-term cohabitative relationship; where the alien was in protected status and deportation was neither imminent nor likely in the foreseeable future; or where eligibility for adjustment of status without the need for a discretionary waiver of inadmissibility has been established. *See, e.g., Matter of Gutierrez-Lopez,* 21 I&N Dec. 479 (BIA 1996). A respondent's relationship to his spouse's offspring may also be an appropriate consideration in the extreme hardship determination. *See Contreras-Buenfil v. INS, supra*. Any hardship to a qualifying spouse must always be considered. *See Watkins v. INS*, 63 F.3d 844 (9th Cir. 1995). In short, as we have often stated, extreme hardship is not a definable term of fixed and inflexible meaning, and the elements to estab-

lish extreme hardship are dependent upon the facts and circumstances of each case. *See Matter of Chumpitazi*, 16 I&N Dec. 629 (BIA 1978). Under the specific facts of this case extreme hardship was not established, and this case should not be misinterpreted as requiring a discount of the hardships present in all cases where the wedding ceremony takes place after proceedings are initiated.

Third, the majority's opinion correctly notes that in purchasing the fraudulent birth certificate, using it to procure a fraudulent social security card, and subsequently using these documents to seek to procure a United States passport in order to travel into and out of the United States and seek employment, the respondent sought to procure both "documentation" and "other benefits" under the Act. The majority's finding is consistent with the close scrutiny of such a finding required by *Matter of Healy and Goodchild,* 17 I&N Dec. 22 (BIA 1979), because of its harsh consequences. However, a small clarification is needed. The other benefits under the Act the respondent sought to procure are the right to travel with a United States passport pursuant to section 215(b) of the Act, 8 U.S.C. § 1185(b) (1994). The majority's language may be misinterpreted as suggesting that using the fraudulent passport to obtain employment is obtaining a benefit under the Act.

Although the use or possession of such document is punishable under section 274C of the Act, 8 U.S.C. § 1324c (1994 & Supp. II 1996), working in the United States is not "a benefit provided under this Act," and we have specifically held that a violation of section 274C and fraud or misrepresentation under section 212(a)(6)(C)(i) of the Act are not equivalent. *See Matter of Lazarte*, 21 I&N Dec. 214 (BIA 1996); *accord Matter of Jimenez-Santillano*, 21 I&N Dec. 567 (BIA 1996); *cf. Matter of Serna*, 20 I&N Dec. 579 (BIA 1992) (relating to possession or use of an altered immigration document). It is long settled that inadmissibility for immigration fraud does not ensue from the mere purchase of fraudulent documents, absent an attempt to fraudulently use the document for immigration purposes. *Matter of Kai Hing Hui*, 15 I&N Dec. 288 (BIA 1975); *Matter of Sarkissian*, 10 I&N Dec. 109 (BIA 1962); *Matter of Box*, 10 I&N Dec. 87 (BIA 1962); *accord Matter of D-L- & A-M-*, 20 I&N Dec. 409 (BIA 1991); *cf. Matter of Serna, supra* (stating that mere possession is not a crime involving moral turpitude).

Finally, the majority points out that the Supreme Court has indicated that we may permissibly construe the element of extreme hardship narrowly. However, such permissibility does not require a narrow construction of extreme hardship, and we have recently declined to do so, choosing instead to rely on our precedents for guidance in our case-by-case determinations. *See Matter of O-J-O-*, 21 I&N Dec. 381 (BIA 1996). Consequently, this decision should not be misinterpreted as a change in our precedents regarding the level of hardship we will require for relief from deportation. *See Matter of O-J-O-, supra*, at 387, 389 (Dunne and Holmes, concurring), and

cases cited therein.

*CONCURRING AND DISSENTING OPINION:* Lory Diana Rosenberg, Board Member

I respectfully concur in part and dissent in part.

In my view the majority opinion is erroneous as a matter of law in every respect. I disagree with the majority opinion for four principal reasons.

First, I disagree that the respondent is inadmissible, as I do not believe that any of the documents he supposedly "procured" fall within the statutory ground of inadmissibility under section 212(a)(6)(C)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(C)(i) (Supp. II 1996), which requires that "a visa [or] other documentation" was used to obtain "admission into the United States or other benefit provided under [the] Act." *Id.* Second, I disagree that section 212(i), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-639 ("IIRIRA"), applies to the respondent, as it contains no express legislative mandate making its application retroactive.

Third, even assuming that the respondent was required to satisfy the more restrictive standard imposed by the IIRIRA, requiring a showing of extreme hardship, and limiting the extreme hardship considered to hardship that would be experienced by his spouse, I find that the extreme hardship adjudication fails to consider all the relevant factors involved, contrary to the law of the United States Court of Appeals for the Ninth Circuit, in which this appeal arises. Fourth, I disagree that the Immigration Judge's denial of voluntary departure is not a proper matter for review, merely because the respondent has not addressed it in his appeal.

It is with regard to my second point of disagreement that I feel I must concur. Arguably, the reasoning in the Attorney General's decision in *Matter of Soriano*, 21 I&N Dec. 516 (BIA, A.G. 1997) (interpreting the new restrictions on eligibility for discretionary section 212(c) waivers to present no retroactivity concerns, by comparing such waivers to prospective injunctive relief, a procedural mechanism that, under *Landgraf v. USI Film Products,* 511 U.S. 244 (1994), would be applicable immediately), may control the issue as to which version of section 212(i) of the Act applies to the respondent's case. Nevertheless, as discussed below, I believe the recent opinions of the Supreme Court, as well as the decisions of three federal circuit courts of appeals and several federal district courts rejecting the Attorney General's interpretation, warrant our reconsideration of *Matter of Soriano*, as well as a fresh interpretation of the statutory section at issue, unencumbered by the reasoning in that decision.

In sum, based on my findings that (1) the majority decision erroneously determines the respondent inadmissible when he is not inadmissible, and (2)

even if inadmissible, the majority either erroneously judges the respondent's waiver application according to the wrong version of the statute, or erroneously applies the prevailing standard applicable to a discretionary determination of the presence of extreme hardship, I conclude that the respondent has been denied a fair hearing, and a reasoned decision. I do not believe that the respondent received a fair hearing as a matter of law, and I do not believe that the favorable and adverse factors present in this case were fairly weighed and balanced as our own standards, applicable circuit standards, and the principle of fundamental fairness require. Consequently, I dissent.

## I. PRELIMINARY CONSIDERATIONS

This case commenced on May 9, 1995, the date the Immigration and Naturalization Service filed the Order to Show Cause and Notice of Hearing (Form I-221) with the Immigration Court. It involves a conviction, the sentence for which was entered on February 5, 1995. The original hearing was convened before the Immigration Judge on October 26, 1995, and the respondent filed an application for adjustment of status and a waiver of inadmissibility on September 19, 1996. Each of these events preceded the enactment of the IIRIRA. Thus, this case is not subject to the majority of the provisions of the IIRIRA related to removable aliens, as the case was pending prior to September 30, 1996, the date the IIRIRA was enacted. *See* IIRIRA § 309(c)(1).

At issue is the respondent's application for adjustment of status based on his undeniably valid marriage to a United States citizen. In addition, at issue is the respondent's application for a waiver of inadmissibility. This aspect of the respondent's appeal involves the question of how difficult are we are going to make it, within the statutory and regulatory confines that may exist, for the respondent to prevail and be granted a waiver and adjustment of status? In this context, we must examine which provisions of the Immigration and Nationality Act actually apply to the respondent, and assuming that the most harsh and restrictive provisions are applicable, how we wish to construe them.

## II. INADMISSIBILITY UNDER SECTION 212(i) OF THE ACT

According to the record, the respondent pled guilty to and was con-

---

[1]Although the majority is not relying on the fact of the respondent's conviction, per se, to find that he is inadmissible and requires a waiver under section 212(i) of the Act, the majority takes issue with the respondent's contention that his conviction for possession of a false identification document does not support a finding that he is deportable as an alien who "by fraud or willfully misrepresenting a material fact, seeks to procure (or . . . has procured)

victed of a violation of 18 U.S.C. § 1028(a)(4) (1994), possession of a false identification document.[1] That federal criminal provision under which the respondent was convicted states as follows:

Whoever, in a circumstance described in subsection (c) of this section—

(4) knowingly possesses an identification document (other than one issued lawfully for the use of the possessor) or a false identification document, *with the intent such document be used to defraud the United States . . .*

or attempts to do so, shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 1028(a)(4) (emphasis added).

According to an "Information" in the record, the conviction refers to the respondent's possession of a false birth certificate, which he used in applying for a United States passport at a passport agency in San Francisco.[2] This conduct occurred on September 27, 1994.

Putting aside, for a moment, the procedural defects in the decisions of the Immigration Judge and the majority related to their failure to consider the actual offense for which the respondent was convicted, the majority inexplicably focuses on the verb "procuring" in assessing inadmissibility. In fact, the operative word in section 212(a)(6)(C)(i) of the Act as it relates to the respondent's case is not whether he procured a document or was seeking to procure another document, but whether the procuring in which he engaged was for the purpose of obtaining "a visa, other documentation, or admission into the United States, *or other benefit provided under this Act.*" (Emphasis added.)

Initially, I note that the conduct of the respondent on which the Immigration Judge and the majority rely in finding the respondent to be inadmissible under section 212(a)(6)(C)(i) of the Act is based on his conviction for offering a United States birth certificate obtained from a friend to obtain a United States passport. The statute under which the respondent was convicted covers conduct that is engaged in with an intent to defraud the United States. It does not require, in every instance, that the conduct engaged in be engaged in with the intent, or with the result, of obtaining a "benefit . . . under this Act." The term "this Act" in section 212(a)(6)(C)(i) refers to the Immigration and Nationality Act.

Thus, an individual could be convicted under 18 U.S.C. § 1028(a)(4) without there being any specific evidence that the individual had any intent

---

[2]In the event that a judgment of conviction does not clearly reflect the offense for which the respondent was convicted, it is proper to look beyond the judgment of conviction to the "record of conviction." *See Matter of Short*, 20 I&N Dec. 136 (BIA 1989); *see also Matter of Pichardo*, 21 I&N Dec. 330 (BIA 1996).

to act, or actually did act to obtain a "benefit under this Act." *Cf.* section 212(a)(6)(C)(i) of the Act. There is nothing in the record of conviction before us, nor in the testimony or other documentation in the record before us, that indicates that the respondent engaged in the conduct resulting in his conviction for possession of a false identification document to obtain a "benefit under [the] Act."

Moreover, neither employment, nor the ability to travel necessarily constitutes a "benefit under this Act." No matter how powerful the majority may wish to make the reach of the Immigration and Nationality Act, it does not extend to the constitutional rights to work and to travel. As should be self-evident, an individual may be prosecuted under federal criminal law for a violation of using false documents "to defraud the United States," but not be convicted of an offense that involves fraud or a material misrepresentation to obtain a "benefit under [the] Act." As the respondent argues, he was convicted only of possession of identification documents, not of using them to procure admission or any other benefit under the Act. His conviction is for possessing the document with the intent to defraud the United States. No more; no less.[3]

Furthermore, it is critical to understand that Congress specifically modified the text of section 212(a)(6)(C) of the Act in the IIRIRA. Our analysis of the respondent's conviction should take into account Congress' action in adding a separate subsection to cover aliens who make false claims to U.S. citizenship. In adding a second subsection, section 212(a)(6)(C)(ii), Congress indicated its intent to encompass "aliens who falsely claim U.S. citizenship for 'any purpose or benefit under this Act (including section 274A) . . .' under any federal or state law." *See* National Immigration Project, *Immigration Law and Defense*, ch. 5, § 5.2, at 41. This new subsection, effective after September 30, 1996, appears to provide that an alien's false claim to citizenship covers situations in which an alien has claimed citizenship to obtain employment. *See also* Department of State cable (no. 97-State-174342) (Sept. 17, 1997), *reprinted in* 74 Interpreter Releases, No. 37, Sept. 29, 1997, at 1483-85 (concluding that after September 30, 1996, the added subsection would warrant a finding of inadmissibility under section 212(a)(6)(C)).

Why would Congress have to amend section 212(a)(6)(C) if subsection

---

[3]Even if the respondent's testimony is considered to establish that the birth certificate was used to seek to obtain a passport, I would question whether seeking to obtain a passport is an act that is covered by the phrase in section 212(a)(6)(C)(i) that refers to seeking to procure or procuring a "benefit under [the] Act." Issuance of a passport is an act of the United States Government that provides a citizen with a document. One who is a citizen or seeks to document the status of being a citizen by obtaining a passport is not seeking a "benefit under [the] Act," as the Act applies, by definition, only to noncitizens.

(i) covered all possible fraud or misrepresentation that could be made for any purpose? Why would such an amendment be necessary if seeking to procure or procuring a passport, which constitutes evidence of citizenship, already was encompassed by the existing section under which the Immigration Judge and the majority contend that the respondent is inadmissible? The answer is that section 212(a)(6)(C)(i) does not cover all fraud or misrepresentation; it covers fraud or misrepresentation to obtain a "benefit under [the] Act."

Being treated as a citizen arguably is not a "benefit under [the] Act," notwithstanding the possibility that citizenship status may have been acquired based on a prior immigrant status. If one is treated as a citizen, one is not subject to the Act. There are federal criminal provisions to deal with persons who abuse the law and who seek to use fraud or some document to present themselves (or who have presented themselves) as citizens. But what such an individual may gain from such misrepresentation cannot necessarily be said to be a "benefit under [the] Act." What he has gained is treatment as a citizen—a person *not* subject to the Act.

Therefore, as I do not conclude that the respondent is inadmissible based on his conviction, or on any testimony that he presented during the hearing, I would not require him to qualify for a waiver of a ground of inadmissibility under section 212(a)(6)(C)(i) of the Act. However, the majority has dismissed the respondent's arguments in this regard, and has forged ahead to impose upon the respondent more than merely a requirement that he establish eligibility for a waiver under section 212(i) as it existed when the respondent's conduct occurred, when his hearing commenced, or when he made application for adjustment of status. The majority demands that he establish that a waiver is warranted under the version of the statute as amended. Therefore, my differences with the majority opinion continue.

### III. RESPONDENT'S APPLICATION FOR A WAIVER UNDER SECTION 212(i)

Assuming a waiver of inadmissibility is required at all, the respondent's application should be considered under the version of section 212(i) of the Act that existed at the time he engaged in activity that resulted in his conviction; at the time he was charged with being deportable and proceedings against him were commenced; and at the time he submitted his application for adjustment of status. Establishing eligibility for a waiver under then-existing section 212(i) of the Act would mean that the respondent would not be required to establish extreme hardship only to his spouse or any other qualifying relative.

As discussed in more detail below, I note that the analysis relied on

by the majority—which is the analysis that the Board invoked in *Matter of Gomez-Giraldo*, 20 I&N Dec. 957 (BIA 1995), and that was echoed by the Attorney General in her recent decision overruling the Board in *Matter of Soriano, supra*—has been rejected repeatedly by the Supreme Court of the United States. Although the Board is bound by the decisions of the Attorney General, the Supreme Court has rejected the underpinnings of the Attorney General's interpretation of an application for a waiver as a "prospective" application in at least two decisions of the Court issued after *Soriano*. The Supreme Court's interpretation to the contrary has also been applied by three federal circuit courts of appeals addressing the immigration provision in question subsequent to the Attorney General's decision in *Soriano*.

In addition, I find questionable the majority's assumption that the respondent and his spouse knew or should have known what version of the law would be applied to their case, or what would be required to establish extreme hardship to the qualifying family member, particularly since the majority has selected this case to establish a precedent decision, essentially rejecting two of the principal cases relied on previously in adjudicating such waivers. Nevertheless, even if he is required to satisfy the terms of the current version of section 212(i) of the Act—enacted into law after he engaged in the conduct leading to his conviction (upon which the question of his admissibility relies), and after he was placed in deportation proceedings and had submitted his application for a waiver and for adjustment of status—I am inclined to find that the respondent's spouse would suffer extreme hardship.

### A. Impermissibly Retroactive Nature of the Current Version of Section 212(i) of the Act

The retroactive application of a statute is not to be presumed, and only will be implemented based on an express statement by Congress of its intention to accomplish such an application. *Landgraf v. USI Film Products, supra*, at 270 (citing *United States v. Heth*, 3 Cranch 399, 2 L. Ed. 479 (1806)); *see also Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 117 S. Ct. 1871 (1997); *Lynce v. Mathis*, 519 U.S. 433, 117 S. Ct. 891 (1997). This doctrine applies to the noncitizen's expectations, which may lodge at the time he engages in conduct or is charged with conduct that may require a waiver, that he will be afforded the opportunity to apply for a waiver that is provided by the statute. It extends to cases in which, at the very least, the relevant statute is in existence at the time an application for such a waiver is made. *Goncalves v. Reno*, 144 F.3d 110 (1st Cir. 1998), *cert. denied*, 119 S.Ct. 1140 (1999).

It is viewed as extending to cases that were commenced at the time the

statute was in existence. *Henderson v. INS*, 157 F.3d 106 (2d Cir. 1998), *cert. denied, sub nom Reno v. Navas*, 119 S.Ct. 1141 (1999); *Sandoval v. Reno*, 166 F.3d 225 (3d Cir. 1999).[4] And it has been construed as applying to cases in which the statute was in effect when a noncitizen pled guilty to an offense on which a later charge of deportability is based. *Wallace v. Reno*, 24 F. Supp.2d 104 (D. Mass. 1998); *see also, e.g., Lee v. Reno* 15 F. Supp.2d 26, 46 (D.D.C. 1998) (finding that a retroactive application of § 440(d) would "disable" the petitioner by rendering him ineligible to apply for a waiver, imposing additional burdens on prior criminal conduct); *Billett v. Reno*, 2 F. Supp.2d 368, 373 (W.D.N.Y. 1998) (finding retroactive application improperly impairs the petitioner's right to request a waiver "despite the fact that he enjoyed such a right at the time he was convicted"); *Sandoval v. Reno*, 1997 WL 839465, at *5 (E.D. Pa. Dec. 30, 1997) (finding that Congress expressed an intent to apply the amendment only prospectively and not to "conduct predating AEDPA's enactment," because an alien's decision to plead guilty would have hinged on his knowledge he was eligible to apply for discretionary relief in subsequent deportation proceedings).

Rejecting the "prospective" construction adopted in *Soriano,* the First and Second Circuits and a growing number of federal district courts have found explicitly that, in the absence of Congress having provided express language to the contrary, the imposition of an amended section of an immigration statute that changes the terms of eligibility for a waiver is impermissibly retroactive when applied to applicants who had settled expectations regarding the opportunity to apply for waiver relief.

A retroactive application of a statute is one that takes away or impairs vested rights, creates a new obligation, or attaches a new disability in relation to past transactions. *Landgraf v. USI Film Products, supra*, at 269; *Hughes Aircraft Co. v. United States ex rel. Schumer*, 117 S. Ct. at 1876. Recently, in *Lindh v. Murphy*, 521 U.S. 320, 117 S. Ct. 2059 (1997), the Supreme Court emphasized that before resorting to the principles regarding

---

[4]*See also Machado v. Reno*, 33 F. Supp.2d 88, at 91 (D. Mass. 1999) (holding that "the salient points of *Goncalves* apply with equal force to cover all persons against whom INS commenced deportation proceedings . . . by the time of AEDPA's enactment"); *Almonte v. Reno*, 27 F. Supp.2d 106, 109 (D. Mass. 1998) (concluding that to limit the holding in *Goncalves* to applications filed before April 24, 1996, "exalts form over substance"); *Ranglin v. Reno*, 27 F. Supp.2d 262 (D. Mass. 1998) (emphasizing that the *Goncalves* analysis is equally applicable to a respondent in deportation proceedings, who had not filed an application by April 24, 1996); *Lee v. Reno*, 15 F. Supp.2d 26, 45-46 (D.D.C. 1998) (finding that in the absence of an express statement by Congress, a "textual argument" is persuasive and supports the conclusion that "Congress did not intend for § 440(d) to apply retroactively. Even if it did, the statute would have retroactive effect, and such intent was not stated clearly enough to overcome the presumption against retroactivity.").

impermissibly retroactive provisions articulated in *Landgraf,* as was done by the Attorney General in *Soriano,* the "normal rules of construction" apply. These rules should be applied to determine a statute's temporal reach, as such a determination may eliminate the possibility of retroactive application and avoid the need for a *Landgraf* analysis altogether. *Lindh v. Murphy*, 117 S. Ct. at 2062-63.[5]

Applying the normal rules of construction to section 212(i) of the Act, as amended by the IIRIRA, it is evident that there is nothing in its plain terms or elsewhere in the statute that even suggests that the amended version of the waiver provision was meant to be applied retroactively to a pending application, which seeks to waive conduct occurring prior to the amendment of the Act. Although, in *Matter of Soriano, supra*, the Attorney General construed a different waiver provision, amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), as being prospective, she neither undertook the type of statutory construction mandated by the Court in *Lindh,* nor addressed the respondent's vested interest in having an opportunity to make the application. Such an assessment now is clearly required according to the Court's decision in *Hughes. Cf. Matter of Soriano, supra.*

The Attorney General's approach to analyzing the reach of the amendment to section 212(c) of the Act has been soundly criticized. *See Goncalves v. Reno, supra*, at 129 (critiquing the opinion of the Attorney General in *Soriano* as misinterpreting *Landgraf* and "effectively [applying] a presumption in favor of retroactive application to any restriction of relief that could be described as discretionary," a proposition that was rejected by the Supreme Court in *Landgraf* itself).[6] In addition, Congress' amendment of section 212(i) in the IIRIRA took place after the Board's decision in *Matter of Soriano, supra*, in which the Board originally had found that in

---

[5]Although neither *Lindh* nor *Hughes directly* overruled the Attorney General's *Soriano* opinion, the Board has a responsibility to conform its interpretation to the legal analysis that has been detailed and repeatedly reaffirmed recently by the nation's highest court. By analogy, federal courts are empowered to consider any intervening changes in controlling case law. *Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988). Moreover, even the strict doctrine of "law of the case" allows for the revisiting of issues where "controlling authority has since made a contrary decision of law applicable to such issues." *Cohen v. Brown University*, 101 F.3d 155, 168 (1st Cir. 1996), *cert. denied*, 520 U.S. 1186 (1997); *see also Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir.), *cert. denied*, 522 U.S. 1008 (1997); *Gillig v. Advanced Cardiovascular Systems, Inc.*, 67 F.3d 586, 590 (6th Cir. 1995); *Pierce v. Cook & Co.*, 518 F.2d 720 (10th Cir. 1975), *cert. denied,* 423 U.S. 1079 (1976).

[6]The First Circuit found the Attorney General's contention in support of her interpretation—that Congress expressly included a retroactivity provision to new restrictions on relief for alien terrorists in section 413 of the AEDPA, 110 Stat. at 1269, only because they were not discretionary—to be erroneous, as the provisions are, with one exception, discretionary. *Goncalves v. Reno, supra*.

the absence of an express temporal restriction making the amended version of section 212(c) of the Act retroactive, the provision would not apply to applications for the waiver that were filed or were pending on the date of enactment of the AEDPA. *Cf. Goncalves v. Reno, supra* (noting that the chronology of legislative events and the issuance of the Board's decision in *Matter of Soriano*, which preceded passage of the IIRIRA, indicates that Congress should have been aware of the prevailing agency interpretation and should have expressly mandated a retroactive application if Congress intended the statute to be interpreted differently).

In other words, Congress must be deemed to have been aware of the Board's original interpretation of section 212(c), which remained in force on September 30, 1996, when it amended section 212(i) of the Act. Likewise, Congress must be deemed to have enacted IIRIRA with the knowledge that *Landgraf*'s "background rule"—i.e., the presumption against retroactivity—would otherwise make its provisions prospective "in the absence of congressional guidance." *Landgraf v. USI Film Products, supra*, at 261, 273; *see also Lindh v. Murphy*, 117 S. Ct. at 2064 ("Since *Landgraf* was the Court's latest word on the subject when the Act was passed, Congress could have taken the opinion's cautious statement about [which type of statutes would be applied retroactively] as counseling the wisdom of being explicit if it wanted such a provision to be applied to cases already pending.")

In light of the reasonable assumption that Congress understood both the principles of statutory construction disfavoring retroactive application of the laws in the absence of an express statement by Congress, and the Board's prevailing interpretation of a comparable amendment to avoid a retroactive application, its failure to expressly mandate that the amended version of section 212(i) of the Act would be applicable to conduct occurring, or cases pending, prior to September 30, 1996, is significant. It makes such an application by the majority in its decision today both unreasonable and contrary to applicable Supreme Court authority. *Goncalves v. Reno, supra*. In the instant case, involving the applicability of the IIRIRA version of section 212(i), the question is whether there is any justification for applying the amended version of section 212(i) of the Act retroactively to actions that occurred, or proceedings and applications that were initiated, prior to the enactment date. *Cf. Lindh v. Murphy, supra*. I find none.

Moreover, in the event that the statutory language presents any question concerning Congress' intent with regard to the statute's temporal reach, the well-established principle that the retroactive application of a statute requires an express statement of legislative intent controls. The Supreme Court outlined a three-part approach in *Landgraf v. USI Film Products, supra*, for determining the temporal reach of a statute: First, whether Congress manifested an intent to apply a statute retroactively through "clear, strong, and imperative" language; second, assuming that there is no

clear expression of legislative intent to apply the statute retroactively, whether the statute would, in fact, have genuine retroactive effect, *id.* at 267-69, 280;[7] and third, if the statute would operate retroactively, whether there is a clear indication in the statute as a whole or in the statute's legislative history, that Congress intended the statute to apply retroactively to past conduct, *id.* at 280. Consideration of each part of the Court's approach in *Landgraf* indicates that section 212(i), as amended, should not be applied retroactively.[8]

A provision, such as section 212(i), as reenacted in the IIRIRA without any specific applicability rule assigned to it, must be read to have only a prospective application. "[W]hen Congress wished to provide [for retroactive application], it knew how to do so and did so expressly." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 572 (1970); *see also Custis v. United States*, 511 U.S. 485, 491 (1994); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213-14 (1988). The Supreme Court has stated clearly and repeatedly the "'principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.'" *Landgraf v. USI Film Products, supra*, at 265 (quoting Justice Scalia's concurring opinion in *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990) (Scalia, J., concurring)); *see also Lynce v. Mathis*, 117 S. Ct. at 895 (noting that "*[i]n both the civil and the criminal context*, the Constitution places limits on the sovereign's ability to use its law-making power to modify bargains it has made with its subjects." (emphasis added)). Thus, the Court held that a presumption against retroactivity "assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits." *Landgraf v. USI Film Products, supra*, at 272-73. It thereby "allocat[ed] to Congress responsibility for fundamental policy judgments con-

---

[7] The Court's decision in *Hughes* specifically calls into question the Attorney General's decision in *Matter of Soriano*, *supra*, in this respect, because it lays down rules completely opposite from those adopted by the Attorney General in that case. *Hughes Aircraft Co. v. United States ex. rel. Schumer,* 117 S. Ct. at 1876.

[8] The Attorney General overruled the Board's decision on the basis of a purported "*Landgraf*" analysis, stating that "nothing in the language of the newly enacted statute" specifies one way or the other whether §440(d) should be applied to pending cases. *Matter of Soriano, supra*, A.G. opinion at 535. Nonetheless, as subsequent federal decisions have established, application of the statutory construction mandated under *Lindh* reflects that, at a minimum, Congress did not intend for provisions such as § 440(d), the section of AEDPA upon which the Attorney General relied to reach her decision in *Soriano*, to apply to pre-enactment convictions. *See Yesil v. Reno*, 973 F. Supp. 372, 379-81 (S.D.N.Y. 1997). The same holds true for Congress' intent with regard to section 212(i) of the Act, under which the respondent seeks a waiver.

cerning the proper temporal reach of statutes." *Id.* at 273.

Indeed, contrary to past Board precedents, according to the Supreme Court's decision in *Lindh v. Murphy*, 117 S. Ct. at 2064, "the rule of negative implication is part of the normal rules of statutory construction." *Sandoval v. Reno*, 166 F.3d at 240. According to *Lindh*, in light of Congress' silence and the principle of "expressio unius est exclusio alterius," we need not consider whether the statute before us is genuinely retroactive pursuant to the standards enunciated in *Landgraf* and *Hughes*. *See Sandoval v. Reno, supra*, at 240; *Henderson v. INS, supra*, at 129 (citing *Lindh v. Murphy*, 117 S. Ct. at 2068). The circuit courts of appeal and various of the district courts that have addressed this issue concur that construction of the "negative implication" created by Congress' failure to mandate a retroactive application reflects that, at a minimum, Congress' silence constitutes an indication of its express intent that the amendment to former section 212(c) of the Act would not apply to proceedings that were initiated before the AEDPA was enacted. *Sandoval v. Reno, supra*, at 241-42; *Henderson v. INS, supra*, at 129. Thus, in the context of retroactivity analysis, congressional silence does not create an ambiguity or any other circumstances in which a prior agency interpretation is owed deference. It constitutes an expression of intent as plainly as if it had affirmatively prohibited a retroactive application of the new statute.

I conclude that although section 212(i) of the Act was modified by the IIRIRA, Congress did not expressly mandate that the new version of section 212(i) was to be applied retroactively. As I have stated here and in prior separate opinions, the type of distinction made by the Attorney General's opinion in *Soriano* has been found by the federal courts to be inappropriate. In the instant case, the application of the amended version of section 212(i) of the Act impairs the respondent's vested right—not necessarily to obtain relief—but merely *to apply* for relief from deportation based on his own hardship. Application of the new amended waiver provision imposes on him the new disability that precludes his advancing any factors relevant to his own hardship in support of his waiver application. Ultimately, it imposes on him the disability of denial of adjustment of status based on a finding of inadmissibility, without reasonable notice of the standards that will be applied to his application for a waiver. As such, it is impermissibly retroactive.

Thus, although the Ninth Circuit, in which this case arises, has not yet addressed this question, the growing number of federal reviewing bodies that have rejected the analysis set forth by the Attorney General in *Matter of Soriano, supra*, supports my conclusion. Notwithstanding the Attorney General's decision in *Matter of Soriano*, I believe that the law requires us to adjudicate the respondent's application for a waiver under section 212(i) of the Act according to the terms of that section as they existed in when the respondent acted and when he submitted his application for a

waiver.

## B. Proper Application of Extreme Hardship Standard
## Under Section 212(i)

What is equally or even more objectionable is the fact that the majority, and the concurring members, accept the application of the new extreme hardship standard to the respondent's spouse without actually considering and weighing the actual factors in the record that point to the hardship the respondent's spouse will suffer if his waiver is denied and he is deported. Even assuming that the majority's imposition of the current version of section 212(i) of the Act is correct, I have two principal objections to the majority's conclusions. First, I find that, in its consideration of the respondent's wife's situation, the majority has completely ignored many of the relevant factors that are authorized by our precedent decisions, and that are required to be taken into account by the decisions of the circuit court in which this case arises. Second, the majority distorts the record with regard to the factors it does consider, and its failure to consider the relevant factors cumulatively in assessing hardship constitutes an abuse of discretion.

While the majority articulates at least some of the various factors that must be considered, both Board and federal circuit court of appeals authorities require consideration of a greater breadth of factors, including the qualifying relative's family ties within and without the United States and the impact of separation; the economic and other conditions in the country to which she have to accompany her relative; the financial, emotional, cultural, and political conditions in that country; her ability to raise children and other quality of life factors in that country; as well as her age, length of residence in this country, health, technical skills, employability, and other factors. *See, e.g., Mejia-Carrillo v. United States*, 656 F.2d 520 (9th Cir. 1981) (relating to consideration of noneconomic hardships resulting from removal); *Ravancho v. INS*, 658 F.2d 169 (3d Cir. 1981) (relating to consideration of psychiatric information); *see also Tukhowinich v. INS*, 57 F.3d 869 (9th Cir. 1995) (relating to consideration of respondent's role as sole provider for her undocumented family here and abroad); *Watkins v. INS*, 63 F.3d 844 (9th Cir. 1995) (relating to consideration cumulatively of spouse's hardship, fear of persecution, child's inability to master a foreign language, and psychological factors); *Salameda v. INS*, 70 F.3d 447 (7th Cir. 1995) (relating to need to consider separation from community ties); *Cerillo-Perez v. INS*, 809 F.2d 1419 (9th Cir. 1987) (relating to consideration of hardship to other than qualifying family members). In addition, it must be noted that in a related context, the Ninth Circuit has been critical of this Board as being overzealous in grasping at any interpretation of law or facts which will allow it to defeat a bona fide claim for suspension of deportation.

*Castrejon-Garcia v. INS*, 60 F.3d 1359, 1362 (9th Cir. 1995).

The majority fails to emphasize, as it should, that *all* relevant factors must be considered both individually and cumulatively. *Matter of O-J-O-,* 21 I&N Dec. 281 (BIA 1996); *Matter of Anderson*, 16 I&N Dec. 596 (BIA 1978); *Matter of Riccio*, 15 I&N Dec. 548 (BIA 1976); *see also Gutierrez-Centeno v. INS*, 99 F.3d 1529 (9th Cir. 1996). Specifically, in *Mattis v. United States INS*, 774 F.2d 965, 968 (9th Cir. 1985), the Ninth Circuit stated unequivocally:

> When the BIA denies relief as a matter of discretion, it may not exercise its discretion arbitrarily. *Patel v. INS*, 741 F.2d 1134, 1136 (9th Cir.1984). *See also INS v. Bagamasbad*, 429 U.S. 24, 26, 97 S. Ct. 200, 201, 50 L. Ed. 2d 190 (1976) (basis for the BIA's discretionary findings must be set forth in writing). BIA discretionary denials must show that the BIA weighed both favorable and unfavorable factors. *De La Luz v. INS*, 713 F.2d 545, 546 (9th Cir. 1983). We have consistently required the BIA to state its reasons and show proper consideration of all factors when weighing equities and denying relief. *See Ahwazi v. INS*, 751 F.2d 1120, 1122-23 (9th Cir. 1985); *Ramirez-Gonzalez v. INS,* 695 F.2d 1208, 1213 (9th Cir. 1983); *Contreras-Buenfil v. INS*, 712 F.2d 401, 403 (9th Cir. 1983); *Ro v. INS*, 670 F.2d 114, 116 (9th Cir. 1982); *Villena v. INS*, 622 F.2d 1352, 1361, n.2 (9th Cir. 1980) (en banc).

The majority opinion does not properly consider all of the factors in the record regarding the hardship faced by the respondent's wife, and its opinion denying the waiver does not reflect a proper consideration of all of the factors relevant to extreme hardship in this case. Instead, the majority places undue weight on certain factors and fails to adequately consider other relevant factors. *Cf. Universal Camera Corp. v. NLRB*, 340 U.S. 474, 491 (1951) (requiring complete assessment of both favorable and detrimental factors); *Watkins v. INS*, 63 F.3d 844, 848 (9th Cir. 1995) (holding that the Board abuses its discretion when it does not "consider all relevant factors before ruling"); *see also Salameda v. INS, supra*.

What is more, I find that in assessing extreme hardship, the majority gives short shrift to a number of material factors that require consideration under our precedent and the controlling law of the United States Court of Appeals for the Ninth Circuit, cited above.[9] In *Watkins v. INS, supra*, at 848 the Ninth Circuit made quite clear that although the Board may choose to "interpret 'extreme hardship' narrowly . . . , *INS v. Wang*, 450 U.S. 139, 145, 101 S. Ct. 1027, 1031, 67 L. Ed. 2d 123 (1981) (per curiam), [we must] "'consider[] all factors relevant to the hardship determination and state[] [our] reasons for denying the requested relief,'

---

[9]The Board is bound to follow the law of the Ninth Circuit, in which this case arises. *See Matter of Anselmo*, 20 I&N Dec. 25, 31-32 (BIA 1989); *see also NLRB v. Ashkenazy Prop. Mgmt. Corp.*, 817 F.2d 74 (9th Cir. 1987).

*Ramirez-Durazo v. INS*, 794 F.2d 491, 498 (9th Cir. 1986)." The court emphasized the following:

> "When the BIA distorts or disregards important aspects of the alien's claim, denial of relief is arbitrary, and the BIA is considered to have abused its discretion." *Saldana v. INS*, 762 F.2d 824, 827 (9th Cir. 1985), *modified,* 785 F.2d 650 (9th Cir. 1986); *see also Jen Hung Ng*, 804 F.2d at 538. "The BIA's denial of relief can be affirmed only on the basis articulated in the decision, and this court cannot assume that the BIA considered factors that it failed to mention in its decision." *Jen Hung Ng*, 804 F.2d at 538; *see also Batoon v. INS*, 707 F.2d 399, 402 (9th Cir. 1983).

*Watkins v. INS, supra*, at 848; *accord Universal Camera Corp. v. NLRB, supra.*

In particular, I dispute the majority's reading of the record to indicate that the respondent's wife never "suggested that she would suffer any particular hardship." *Matter of Cervantes*, 21 I&N Dec. 3380, at 10 (BIA 1999). Moreover, I find the majority's assessment of some of the factors it does consider relating to the wife's hardship to be objectionable. Specifically, as I read the opinion, the majority dismisses the hardship that the respondent's wife, a naturalized citizen, might face, primarily because she speaks Spanish and was born in Mexico, the country to which the respondent would be deported. What kind of an evaluation is that? What does that say about the majority's view of United States citizenship, albeit citizenship acquired through naturalization?

Are we to assume that the majority gives such little value to the meaning of citizenship, or supposes that naturalization acquired by a spouse of Mexican origin is of such little import that no hardship would be experienced by the respondent's wife were she forced to accompany her husband to Mexico or face separation from him? In fact, the transcript reflects that the respondent's spouse, who was 21 at the time of the hearing before the Immigration Judge, came to the United States as a baby and has never lived in Mexico.

Furthermore, although it is barely evident from reading the majority opinion, the record also reflects quite clearly that the respondent's wife has extremely close family ties with her parents, and that she and her husband live together as a family with her parents and her sisters. The respondent's wife also clarified that her mother is a United States citizen by birth, her father a resident alien, and that her two sisters were born in the United States. The majority's contention that the "majority of her family is originally from Mexico," is absolutely specious. *Matter of Cervantes, supra*, at 10. The respondent has lived in this country with her parents and her sisters and her extended family for almost her entire life. No matter where her father or members of her extended family were originally from, this family has lived in a close-knit relationship in the United States for years. That the respondent's grandparents or her father was born in Mexico is meaningless

to an assessment of the isolation and lack of family support she will have today, if she must accompany her husband to Mexico.

At the same time, her relationship with her husband dates back to 1994, when she met him at a school dance. They were married in September 1995. The majority's belittling of the respondent's relationship with her husband because she was aware he was subject to deportation proceedings when they were married says nothing about the quality of their relationship, or the hardship she would experience if forced to choose between her husband and the rest of her family. Even assuming his immigration status at the time of their marriage is of some effect in the overall discretionary equation, the fact that the respondent was deportable does not undermine his wife's expectations at the time they were wed. At the time they married, the respondent's wife reasonably may have assumed that her husband would be able to apply for and obtain both adjustment of status and a waiver under then-existing section 212(i) of the Act, which, according to both *Matter of Da Silva*, 17 I&N Dec. 288 (Comm'r 1979), and *Matter of Alonzo*, 17 I&N Dec. 292 (Comm'r 1979), would have been liberally construed.

Moreover, other precedent decisions cannot be dismissed as eagerly as the majority may wish. Such decisions, which we not only followed historically, but which we issued directly, emphasize the often determinative weight given to family ties and, particularly, to marriage to a United States citizen. For example, reiterating the recognition that "[i]t is difficult and probably inadvisable to set up restrictive guide lines for the exercise of discretion," because "[p]roblems which may arise in applications for adjustment must of necessity be resolved on an individual basis," the Board held in *Matter of Arai*, 13 I&N Dec. 494, 495-96 (BIA 1970):

> Where adverse factors are present in a given application, it may be necessary for the applicant to offset these by a showing of unusual or even outstanding equities. Generally, favorable factors such as family ties, hardship, length of residence in the United States, *etc.,* will be considered as countervailing factors meriting favorable exercise of administrative discretion.

Our decisions in this regard not only should influence the weight given to the factors presented in the case before us today, but also may be presumed to have contributed to the respondent's wife's expectations when she married her husband. It cannot be denied that in *Matter of Ibrahim*, 18 I&N Dec. 55 (BIA 1981),[10] the Board clarified and reaffirmed its decision in *Matter of Cavazos*, 17 I&N Dec. 215 (BIA 1980), as standing for the rule

---

[10]The Board's limitation of the *Cavazos* rule in *Matter of Ibrahim, supra*, to cases involving immediate relatives does not detract from a proper consideration of the respondent's waiver application, as the respondent's wife is a United States citizen, resulting in his classification as an immediate relative.

that, in the absence of other adverse factors, an application for adjustment of status as an immediate relative should generally be granted in the exercise of discretion notwithstanding the fact that the applicant entered the United States as a nonimmigrant with a preconceived intention to remain. In addition, subsequent Board decisions found the fact of marriage and family relationships to override the adverse factor of a criminal conviction. *See, e.g., Matter of Battista*, 19 I&N Dec. 484 (BIA 1987) (emphasizing that an adjustment application filed by an alien whose immediate relative petition was approved prior to his entry as a nonimmigrant, and who had been convicted of grand theft, requires consideration of all factors, including his significant family ties).

The respondent's wife testified that if necessary she would give up her family to accompany her husband, because "I swear that I was gonna stay with him until the death will separate us," but indicated immediately thereafter that it would be a hard choice, because "it's a hard situation." She went on to state that she was extremely close emotionally with her family, especially with her mother. She stated further that her grandparents, aunts, and cousins live in a small town 8 minutes away from her family's home where she resides. She testified that were she forced to accompany her husband to Mexico, she would not have the money to travel back and forth to visit her family. She stated further that her family, being as large as it is, would not be able to visit her often. She explained that her parents "don't even go to Mexico either because it's hard."

Furthermore, the respondent's wife testified that she would have difficulty finding employment, and the respondent's testimony indicates that he and his wife have very little money. The record reflects that the respondent's wife is not now employed but is attending a technical training course involving computers on a part-time basis. Rather than treat the respondent's and his wife's economic situation as a factor contributing to extreme hardship, the majority turns their financial difficulties as a factor that minimizes the wife's hardship were her husband to be denied the waiver and deported. According to the majority, since the respondent and his wife have little money here in the United States and the respondent's wife is unemployed, they might just as well be poverty-stricken in Mexico. Even were this a reasonable analysis of the financial factors involved, it utterly ignores the fact that here in the United States the respondent and his wife live with and can call on the support of the respondent's wife's family.

As emphasized in *Watkins v. INS, supra*, at 850, we are required to "'consider all relevant factors cumulatively in deciding whether extreme hardship has been established.' *Batoon*, 707 F.2d at 401 (emphasis added); *see also Dragon v. INS*, 748 F.2d 1304, 1306 (9th Cir. 1984); *Santana-Figueroa v. INS*, 644 F.2d 1354, 1357 (9th Cir. 1981)." The court stressed that "the BIA correctly stated the law, but failed to apply it correctly. It found that the professional and social changes petitioner would face . . . .

would not rise to the level of extreme hardship. It then found separately that the birth of petitioner's second son 'standing alone does not change our finding.' But the standard is not whether each factor, standing alone, constitutes extreme hardship, *but whether the cumulative effect of all factors constitutes extreme hardship." Watkins v. INS, supra*, at 850 (emphasis added).

Such a cumulative evaluation is glaringly absent from the majority opinion. Instead the majority decision takes the fact of the respondent's wife's marriage and her family ties, minimizes them, and rejects them as an indicia of extreme hardship, and then takes the respondent's wife's financial situation and minimizes and rejects it as a significant hardship factor. *Cf. Arrozal v. INS*, 159 F.3d 429, 433 (9th Cir. 1998). Nowhere does the majority opinion cumulatively consider these and other factors apparent in the record-such as the length of the wife's residence in the United States, her citizenship status and what giving that up in the sense of leaving the United States would mean, and her desire to have a family with her husband-and weigh them together.

This is precisely the type of erroneous and arbitrary evaluation that violates the respondent's due process rights to a fair hearing and a reasoned decision with regard to his waiver application. *Universal Camera Corp. v. NLRB, supra*. Consequently, in my view, no matter what statutory limitation may exist with respect to judicial review of discretionary decisions made by the Attorney General, the abuse of discretion present in the majority opinion in this case constitutes a substantive deprivation of the respondent's due process right to make an application for a waiver and have it fairly and meaningfully considered and adjudicated. *See Kalaw v. INS*, 133 F.3d 1147, 1153 (9th Cir. 1997); *see also Arrozal v. INS, supra* (finding jurisdiction to hear a motion to reopen).


### IV. CONCLUSION


I do not believe the respondent is inadmissible under section 212(a)(6)(C)(i) of the Act. Even if he is inadmissible, I do not believe that the current version of the section 212(i) waiver provision applies to his case, and I find such an application to have an impermissibly retroactive effect, holding the respondent to a standard that is not the one that existed (a) at the time he was convicted, (b) when he was charged with being deportable, or (c) when he made his adjustment and waiver application. However, even assuming he must satisfy the current terms of section 212(i) of the Act, which require that he establish that his wife, who is his qualifying relative, will suffer extreme hardship, I believe he has done so. I conclude that the respondent has established that his wife would suffer extreme hardship were she required either to accompany him to Mexico and leave her fami-

ly, or to separate from him and remain with her family in her adopted country where she has lived since she was an infant. I conclude further that the favorable factors presented in this case in terms of the respondent's marital relationship and the couple's ties to an extensive family network in this country, together with the hardship his wife would suffer, warrant granting his application for adjustment of status and a waiver under section 212(i) of the Act in the exercise of discretion.