In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2576

CHEIKH LAM,

*Petitioner,*

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A076-765-699

ARGUED JANUARY 6, 2012—DECIDED OCTOBER 16, 2012

Before MANION and WILLIAMS, *Circuit Judges,* and
CASTILLO, *District Judge.**

WILLIAMS, *Circuit Judge.* After being found inadmissible
due to a 2002 conviction for fraud, Cheikh Lam sought

---

* The Honorable Ruben Castillo, United States District Court
for the Northern District of Illinois, Eastern Division, sitting
by designation.

a waiver of inadmissibility under section 212(h)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(h)(1)(B). That section provides that a noncitizen may obtain a waiver if he is the spouse, parent, son, or daughter of a United States citizen or lawful permanent resident who would suffer extreme hardship if the noncitizen is removed. At a hearing, Lam and his United States citizen wife presented evidence that his wife suffered from depression and argued that she would face extreme hardship if he were removed to his native Senegal. Lam was also asked about the events leading to his 2002 conviction. The Immigration Judge ("IJ") found that Lam had not shown that his wife would suffer hardship that reached the level of "extreme," and that he failed to show rehabilitation because his testimony conflicted with a document in the record related to an investigation of an incident at a car dealership. Lam's attorney failed to file a brief on appeal, and the Board of Immigration Appeals ("BIA") dismissed the appeal.

After Lam obtained new counsel, the BIA reinstated the appeal but dismissed it after briefing, finding that the IJ did not err in his hardship and credibility determinations. Because we find that the IJ and BIA overlooked material evidence related to Lam's wife's depression and improperly relied on a report to determine that Lam failed to show rehabilitation, we grant Lam's petition for review, vacate his removal order, and remand to the agency for reconsideration.

## I. BACKGROUND

Cheikh Lam, a native and citizen of Senegal, first entered the United States on a visitor's visa in 1994. In 1995, he adjusted his immigration status to that of full-time student, and in 2000, he again adjusted his status to become a lawful permanent resident ("LPR") based on his marriage to a United States citizen. His wife, Ms. Sophia Lin, is a naturalized citizen of Taiwanese descent, and the couple has two young United States citizen children.

In January 2002, Lam pled guilty to violating 18 U.S.C. § 1028(a)(7). The indictment charged Lam with having "knowingly used . . . the name and social security number of an individual . . . with the intent to commit . . . forgery" and stated that the conduct took place in Oak Park, Illinois. Lam was sentenced to three years of probation and ordered to pay a $2,000 fine.

In December 2004, Lam returned to Chicago from a trip abroad, and immigration officials at O'Hare International Airport, made aware of his conviction, deferred his inspection. In March 2005, the Department of Homeland Security ("DHS") formally paroled Lam into the United States, and served him with a Notice to Appear, thereby placing him in removal proceedings. Lam was designated as an LPR seeking admission to the United States and was charged with inadmissibility for commission of a crime involving moral turpitude under section 212(a)(2)(A)(i)(I) of the INA, 8 U.S.C. § 1182(a)(2)(A)(i)(I).

Lam hired Guy Croteau to represent him before the IJ. A master calendar hearing was held in May 2005, and

the IJ granted Lam a continuance and set a deadline of September 20, 2005, by which a pre-hearing statement with evidence of Lam's eligibility for relief from removal had to be filed with the court. No statement was ever filed. On October 4, 2005, Lam, through counsel, contested that his conviction was for a crime involving moral turpitude. Lam's counsel also informed the court that despite not having filed a statement with the court, Lam would seek relief under INA § 212(h)(1)(B), 8 U.S.C. § 1182(h)(1)(B), under which a noncitizen may obtain a waiver if he is the spouse, parent, son, or daughter of a United States citizen or LPR who would suffer "extreme hardship" if the noncitizen is removed.

After a number of continuances, the next hearing took place in April 2007. At that hearing, Croteau informed the court that his client would not appear because Croteau failed to review with Lam a change in the hearing date. The IJ noted that Croteau appeared to have committed "a serious dereliction of duty" by failing to communicate the correct hearing date to his client. Nevertheless, the IJ waived Lam's appearance for the hearing and found that the charge of inadmissibility was established because Lam's conviction constituted a crime involving moral turpitude. The IJ remarked that Lam appeared prima facie eligible for a § 212(h) waiver and carried the case over for consideration of that form of relief.

At a hearing in June 2008, Lam was present, but his counsel was not. Lam was informed after calling

Croteau's office that his counsel had been hospitalized.[1]
At a final hearing in September 2008, the IJ heard testi-
mony on Lam's § 212(h) waiver application. Lam
testified that he and his naturalized wife had two
United States citizen children, then two years old and
two weeks old. He stated that he had supported his
family but that when he lost his permanent residency
card, he was unable to work. He also said that the
family began to rely on his wife's salary as an adjunct
professor, but at the time of the hearing nobody in the
family worked because his wife had just given birth.
Lam said that the bank had begun foreclosure pro-
ceedings on the family home. He also stated that if he
were removed, neither his wife nor his children would
live with him in Senegal because of discrimination
there against people of Taiwanese descent. He testified
that his wife had undergone psychiatric counseling and
was depressed. Lam stated that he volunteers in the
community and assists in a soup kitchen.

Lam's wife, Ms. Lin, testified that she had been in
denial about her depression and that because of Lam's
removal proceedings, "everything snowballed into post-
partum depression." She testified that the family
faced financial difficulties because her husband could
not obtain employment with his current status and that

---

[1] The IJ continued the case for two weeks and instructed
Croteau's office to provide a doctor's letter regarding his
absence. At the next hearing date, Croteau failed to provide
a doctor's note. On August 7, 2008, he eventually provided
medical records regarding his absence.

she only had a part-time, adjunct position at an art college. She denied knowing the details of Lam's criminal conviction.

Lam testified about both the events leading to the conviction and a prior arrest, but the record is not entirely clear as to when he is referring to which incident. (We discuss Lam's testimony in greater detail below). The IJ found the testimony "not credible and not plausible" based on a document in the record that purported to be a United States Secret Service investigation of his conduct. Relying on the document, the IJ found that Lam had not shown rehabilitation. The IJ also found that Ms. Lin had not shown "credible evidence" that she would face ethnic discrimination in Senegal and stated that her "stress" did not render her hardship extreme. The IJ therefore denied Lam relief under INA § 212(h).

Lam sought to appeal the decision of the IJ. In October 2008, Croteau, Lam's attorney, filed a Notice of Appeal with the BIA indicating that a brief would be filed. After receiving one extension, Croteau failed to file any brief on Lam's behalf. The BIA then summarily dismissed Lam's appeal. Lam then filed a Request for Investigation with the Illinois Attorney Registration Disciplinary Commission ("ARDC"). (ARDC complaints alleging misconduct had already been filed against Croteau in at least five other cases.)

After obtaining new counsel, Lam filed a Motion to Reopen and Remand with the BIA in March 2010, alleging ineffective assistance by his previous counsel. The BIA

granted the motion and reinstated the prior appeal. Lam's new counsel submitted a brief along with additional evidence that Lam's previous counsel failed to provide, including country condition reports and medical records relating to Ms. Lin's depression. Lam alleged that the IJ erred in finding that his qualifying relatives would not suffer "extreme" hardship, and that the IJ improperly relied on the record in finding a lack of rehabilitation. He also argued that the failures of his previous counsel prejudiced his previous relief application.

A three-member panel of the BIA dismissed Lam's appeal, finding that the IJ did not clearly err in its adverse credibility determination or in finding that Lam failed to show rehabilitation based on his inconsistent testimony, which was "unrelated to any actions of previous counsel." It also found that the new evidence of hardship submitted on appeal did not warrant further proceedings or remand. This petition for review followed.

## II. ANALYSIS

### A. This Court Has Jurisdiction to Examine Errors of Law

We begin our analysis with the question of jurisdiction. Section 242(a)(2)(B) of the INA generally deprives courts of jurisdiction to review discretionary denials of immigration relief. 8 U.S.C. § 1252(a)(2)(B); s*ee also Ali v. Achim*, 468 F.3d 462, 465 (7th Cir. 2006). We may review the discretionary decision to deny a waiver of

inadmissibility only where the petition for review raises "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D); *see also Khan v. Mukasey*, 517 F.3d 513, 517 (7th Cir. 2008). As such, we lack jurisdiction to review the Attorney General's exercise of discretion when denying a waiver of inadmissibility, but we retain jurisdiction to examine whether an error of law occurred. *See Khan*, 517 F.3d at 517 (citing *Ali*, 468 F.3d at 465). That error could be a misinterpretation of a statute, regulation, or constitutional provision, but it could also include a misreading of the BIA's own precedent, the BIA's use of the wrong legal standard, "or simply a failure to exercise discretion or to consider factors acknowledged to be material to such an exercise." *Huang v. Mukasey*, 534 F.3d 618, 620 (7th Cir. 2008) (citations omitted). That error could also be overlooking a petitioner's evidence. *Escobar v. Holder*, 657 F.3d 537, 544 (7th Cir. 2011) ("Even though our review is deferential, the [Board] may not simply overlook evidence in the record that supports the applicant's case." (internal quotations and citation omitted)); *Iglesias v. Mukasey*, 540 F.3d 528, 531 (7th Cir. 2008) ("[A] claim that the BIA has completely ignored the evidence put forth by a petitioner is an allegation of legal error.").

## B.   The Immigration Judge and Bureau of Immigration Appeals Overlooked Key Evidence

The grant of a waiver of inadmissibility requires both a finding of extreme hardship for a qualifying relative *and*

the favorable exercise of discretion. *See* INA § 212(h); 8 U.S.C. § 1182(h). Here, the IJ denied the waiver on both grounds, finding that the hardship suffered by Lam's family would not be "extreme," and that Lam did not warrant a discretionary waiver because of his lack of rehabilitation. For us to have jurisdiction over the claim, Lam must show a colorable claim that legal error occurred with respect to both findings.

Lam argues that the IJ and BIA overlooked key evidence related to the extreme hardship claim. Ms. Lin testified that she "was already depressed before [she] had the children," and that after the birth of her first child, she "saw a spike in the problem after [her] first pregnancy" and suffered from "severe" postpartum depression. She also testified that she "cannot care for two children on [her] own, psychologically." She stated that her doctor had recommended medication, but at the time of the hearing, she had just given birth and was reluctant and was "being cautious about medication at [that] point." Lam submitted a letter from his wife's psychologist, who stated that Ms. Lin suffered from "severe" postpartum depression and that she was "truly psychologically unable to care fully" for their children. Her psychologist also stated that Lam's removal would place Ms. Lin "in extreme psychological distress."

In finding that the hardship Ms. Lin would suffer was not "extreme," the IJ only stated that the *family* is "currently stressed" and that Ms. Lin faces "psychological stress" because of the *removal proceeding*. The IJ did not mention or discuss Ms. Lin's depression. By only briefly

referencing her "stress," and even so, only "stress" related to the removal proceeding, the IJ ignored evidence that was material to the finding of extreme hardship. As we have previously held, "failure to exercise discretion or to consider factors acknowledged to be material to such an exercise—such as the wholesale failure to consider evidence—[is] an error of law. . . ." *Iglesias*, 540 F.3d at 531 (internal quotation marks and citations omitted); *see also Champion v. Holder*, 626 F.3d 952, 956 (7th Cir. 2010) (finding jurisdiction and remanding to the BIA where the IJ and BIA "virtually ignored" and "failed to consider" evidence related to hardship for cancellation of removal).

The government argues that the BIA considered such evidence, but the BIA only referenced Ms. Lin's depression when discussing Lam's ineffective assistance of counsel argument. Even then, the BIA only mentioned in passing Ms. Lin's "depression following the birth of her child." Ms. Lin, however, testified to depression prior to her pregnancies, throughout her second pregnancy, and after the (then recent) birth of her second child. We do not find such a passing reference in the ineffective assistance context to be consideration of this critical component of the "extreme hardship" analysis. Where the IJ and BIA overlook such evidence, an error of law occurs and the proper remedy is a remand for reconsideration. *Champion*, 626 F.3d at 956-57; *see also Kone v. Holder*, 620 F.3d 760, 763-64 (7th Cir. 2010); *Huang*, 534 F.3d at 620 (stating that a failure to consider factors acknowledged to be material to an exercise of discretion amounts to legal error).

### C. The Immigration Judge Relied on Improper Evidence

We turn next to the IJ's discretionary denial of the § 212(h) waiver. The IJ found that Lam failed to show rehabilitation because he was not "forthright and credible in his testimony about the activities which culminated in his conviction." At the hearing, Lam's counsel asked him about his 2002 federal fraud conviction. Lam testified that a friend named "Oliver" had paid him $200 to pick up an Isuzu at Oak Park Suzuki. According to Lam, Oliver had given the dealership a fake name. When Lam went to retrieve the car, he signed Oliver's name on the vehicle registration card and was subsequently arrested by the Oak Park Police.

At the hearing, Lam's counsel introduced into evidence a four-page document that appears to be the second of two reports from the Chicago field office of the United States Secret Service summarizing an investigation that followed Lam's arrest by authorities in Oak Park, Illinois. That document states that Lam contacted Gateway Chevrolet-Oldsmobile in April 2001 about the purchase of a car. On April 3, 2001, Ken Mizdrak, a salesman at the dealership, met with Lam's co-signer, an "Aaron Meyer." A week after Lam purchased a 1997 Lexus ES300, he began having difficulty with the engine. Mizdrak offered to replace the vehicle with an Isuzu Vehicross and met with Meyer to get the necessary paperwork signed. Although the document notes that federal authorities arrested Lam for fraud on June 4, 2001, it does not indicate what the act of fraud was. A

separate arrest report in the record shows that local police arrested Lam on May 11, 2001, in Oak Park on a forgery charge.

The government did not submit at the hearing (or on appeal) the full record of conviction from Lam's guilty plea, so there is no plea agreement or colloquy that might shed light on the facts leading to Lam's conviction. The indictment only states that on May 11, 2001, in Oak Park, Illinois, Lam "knowingly used, without lawful authority, a means of identification of another person . . . with the intent to commit, and to aid and abet, an unlawful activity that constituted a felony under the laws of the State of Illinois, namely forgery." The judgment does not provide the factual basis of the plea either. At oral argument, the government did not have any further insight to offer about the actual events that led to Lam's conviction and conceded that on the basis of the current record, the underlying facts of Lam's conviction are unknown.

We have held that an IJ may rely on hearsay evidence "so long as it's probative and its use is not fundamentally unfair." *Ogbolumani v. Napolitano*, 557 F.3d 729, 734 (7th Cir. 2009) (citing *Olowo v. Ashcroft*, 368 F.3d 692, 699 (7th Cir. 2004)). Here, the lack of probative value of the Secret Service document is clear on its face: it has to do with events at a Gateway Chevrolet-Oldsmobile dealership—a dealership that Lam acknowledged in his testimony (and the government does not contest) is located on North Milwaukee Avenue in the Jefferson Park neighborhood of Chicago, approximately

nine miles north of Oak Park and under the jurisdiction of the Chicago Police Department. Given that the indictment states that the events underlying the federal charge occurred in Oak Park, Illinois, the Secret Service document was not a proper source on which to rely to find discrepancies in Lam's testimony regarding his federal conviction.

The government argues that Lam's testimony on cross-examination itself is enough to support the IJ's exercise of discretion and strip us of jurisdiction. But the only thing that Lam's testimony reveals is his (and possibly the government's) confusion regarding the Gateway dealership incident. It is clear from the record that there were two dealerships involved and that the IJ relied on improper evidence in making his discretionary determination that Lam failed to exhibit rehabilitation. Because Lam is not disagreeing with the weight that the IJ and Board placed on the evidence, *see Huang*, 534 F.3d at 621, but on mischaracterization of the document as impeachment evidence, we have jurisdiction over Lam's claim. We find that reliance on the document was improper. It is not clear to us whether the IJ's discretionary determination would stand without reliance on the improper evidence, so we remand to the BIA for reconsideration.

## III. CONCLUSION

For the reasons set forth above, we GRANT Lam's petition for review, VACATE the order of removal, and

REMAND to the agency for reconsideration of Lam's application for a waiver of inadmissibility.